UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SRAM CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 4019 |
| | ) | |
| SUNRACE ROOTS ENTERPRISE CO., | ) | Judge Rebecca R. Pallmeyer |
| LTD., a foreign corporation; SUNRACE | ) | |
| STURMEY-ARCHER USA, a California | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff SRAM Corporation ("SRAM"), an Illinois corporation, manufactures bicycle gear shifters with speed indicator display windows under the trade name "Rocket." Defendant SunRace Roots Co., Ltd., is a Taiwanese manufacturer of bicycle components which it distributes through an affiliated entity, Defendant SunRace Sturmey-Archer USA ("SunRace USA"), a California corporation. SunRace claims it is the exclusive licensee of a "bicycle speed indicator" patent and has accused SRAM of infringing that patent. Plaintiff SRAM seeks a declaratory judgment of non-infringement (Count I), and alleges that Defendants' infringement allegations constitute tortious interference with business relations (Count II). Defendants have moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1), (2), and (6). For the reasons stated here, the motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff's "Rocket" gear shift product was "at one time" manufactured in Taiwan and is now manufactured in mainland China by SRAM's subsidiary, Sandleford, Ltd. (Decl. of Brian Benzer [hereinafter "Benzer Decl."], Exhibit 1 to SRAM Corporation's Memorandum in Opposition to

SunRace's Motion to Dismiss [hereinafter, "Opposition Memo"], ¶ 4.) SRAM claims that it has sold more than 40,000 units of the product in the United States either directly to consumers or to bicycle manufacturers. (Benzer Decl. ¶ 4.) Asserting that the "Rocket" infringes its rights in Taiwanese and U. S. Patents, SunRace directed a "cease and desist" letter to the Sandleford entity on May 21, 2004, to which Sandleford, not SRAM, responded. (Ch'en He Kuei letter of 5/21/04, Exhibit A to Opposition Memo.) Sandleford's Taiwanese attorney responded to that letter. (Decl. of Yu-Ting Hsu [hereinafter, " Hsu Decl."], Exhibit A to Defendants' Memorandum of Law in Support of Joint Motion to Dismiss, ¶ 8.)

On June 7, 2004, however, five customers who purchased Rocket shifters for distribution in the United States notified SRAM they had been contacted by SunRace's Taiwanese attorneys and warned to stop purchasing the product. SRAM responded to this notice by sending a letter to its customers asserting that the Rocket does not infringe any patent and stating SRAM's intention to "engage Sunrace and get this issue resolved." (SRAM letter of 6/9/04, Exhibit B to Opposition Memo.). On June 11, 2004, SRAM's Director of Corporate Development, Brian Benzer, also contacted Alan Su, the President of SunRace USA to resolve the issue. When Benzer received word the following day that another client had been warned by SunRace against purchasing the Rocket, however, SRAM initiated this lawsuit on June 14, 2004, seeking injunctive and declaratory relief.[1] (Benzer Decl. ¶ 11.) SunRace responded by filing its own infringement action against Sandleford in Taiwan on July 5, 2004. (Hsu Decl. ¶ 10.) SunRace Taiwan claims it holds an exclusive license

---

[1] SRAM and SunRace are no strangers to federal litigation. See e.g., SRAM Corp. v. AD-II Eng'g, Inc., 109 Fed. Appx. 398 (Fed. Cir. 2004); SunRace Roots Eenterprises Co. v. SRAM Corp., 336 F.3d 1298 (Fed. Cir. 2003); SRAM Corp. v. Shimeno, Inc., 25 Fed. Appx. 626 (9th Cir. 2002); SRAM Corp. v. AD-II Eng'g, Inc., 326 F. Supp. 2d 903 (N.D. Ill. 2004); Hertzberg v. SRAM Corp., No. 96 C 6944, 2000 WL 1154070 (N.D. Ill. Aug. 14, 2000).

in the Taiwanese and U. S. Patents, and that the patents themselves are owned by a Taiwanese government institute. (Hsu Decl. ¶ 4.)

## DISCUSSION

**Standard of Review**

SunRace seeks dismissal of this action under Rule 12(b)(1), 12(b)(2), and 12(b)(6). A motion under Rule 12(b)(1) challenges the court's jurisdiction over the subject matter – that is, the court's authority to render final judgment over the dispute. In addressing such a motion, the court will accept all well-pleaded facts as true and draw reasonable inferences from those allegations in support of the plaintiff, *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), but it is the plaintiff who bears the burden of demonstrating subject matter jurisdiction. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Rule 12(b)(2) relates to the court's personal jurisdiction over the defendant. Again, the plaintiff bears the burden on the issue, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997), but the burden is not a heavy one: Plaintiff need only make a prima facie showing that personal jurisdiction exists. 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351 (2d ed. 1990). Again, the court draws reasonable inferences in favor of plaintiff. *RAR*, 107 F.3d at 1275.

A 12(b)(6) motion to dismiss for failure to state a claim similarly requires the court to consider the allegations in the light most favorable to plaintiff and to presume the truth of all well-pleaded facts and allegations. *Cole v. U. S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A.  Subject Matter Jurisdiction

There is no genuine challenge to the court's jurisdiction to address SunRace's U. S. patent rights. Defendants argue, however, that this court has no jurisdiction to adjudicate Plaintiff's claim for a declaration of non-infringement of the Taiwanese patent. Under 28 U.S.C. § 1338(b), the district court has jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws." 28 U.S.C. § 1338(b). SRAM contends that its tortious interference claim implicates the Taiwanese patent and therefore satisfies this provision.

Whether a United States court has jurisdiction to entertain a claim of infringement involving a foreign patent is a difficult issue. In *Packard Instrument Co. v. Beckman Instruments, Inc.*, 346 F.Supp. 408 (N.D. Ill. 1972), Judge Tone of this court assumed he had subject matter jurisdiction over foreign patent claims but nevertheless abstained from deciding them; he observed that determination of the validity of foreign patents would involve foreign governmental concerns in which he had no expertise, and that the plaintiff could win full relief by way of enforcement of the United States patent. *See generally* John Gladstone Mills III, Donald C. Reiley III, and Robert C. Highley, 4 PAT. L. FUNDAMENTALS § 21:4 (2d ed.) (2005) ("Under ordinary circumstances, United States courts will decline to adjudicate claims alleging the infringement of foreign patents, even though the alleged infringers are subject to the jurisdiction of a United States court.") A statute purporting to confer subject matter jurisdiction "must be narrowly construed, with ambiguities resolved against the assumption of jurisdiction." *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994). On the other hand, as noted in the commentary to § 1338(b), the provision was adopted to prevent "piecemeal litigation" and permit resolution in a single proceeding of common law claims and statutory patent claims.

4

The Federal Circuit has recently accepted an interlocutory appeal to resolve this difficult question of whether a federal court has jurisdiction over claims of infringement of foreign patents. *See Voda v. Cordis Corp.*, No. MISC 785, 122 Fed. Appx. 515 (Fed. Cir. 2005). This court is inclined to await the Court of Appeals' instruction on the matter. Pending a ruling in *Voda*, the motion to dismiss the claim for a declaration of noninfringement of the Taiwanese patent will be denied without prejudice.

### B. SunRace USA's Status as a Party Defendant

SRAM has asserted two claims against SunRace USA: a claim for a declaratory judgment on the matter of infringement and a claim of tortious interference with business relations. Defendants seek dismissal of each of these claims under Rule 12(b)(6). With respect to the declaratory judgment claim, the court agrees that SRAM's allegations are insufficient as against SunRace USA. Although SRAM's brief complaint alleges that "SunRace" is the exclusive licensee of the United States and Taiwan patents at issue here, Defendants contend that only SunRace Roots Enterprise Co. has any rights in the patents. Indeed, Plaintiff has not challenged Defendants' assertion that SunRace USA has no such license rights. As the courts have interpreted U.S. patent law, only a patentee or an exclusive licensee has standing to institute an action for infringement. *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 888 (9th Cir. 2005), citing *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000). It follows that because SunRace USA has no standing to defend the scope or validity of the patents, SRAM has no basis to seek declaratory relief against that entity. *See Ostow & Jacobs, Inc. v. Morgan-Jones, Inc.*, 180 F.Supp. 38, 40 (S.D.N.Y. 1959) (a stranger to a patent cannot be named in a declaratory judgment action because there would be no controversy as required under the Declaratory Judgments Act).

5

Defendants' opening memorandum makes no mention of SRAM's tortious interference claims. In their reply memorandum, Defendants urge that this claim must be dismissed as against SunRace USA because "Defendants have put forward evidence that SunRace USA had no contacts whatsoever with any of SRAM's customers" and that "Plaintiff presented no evidence to the contrary...." (Defendants' Reply in Support of Joint Motion to Dismiss, at 11.) The court assumes that Plaintiff and its attorneys have met their obligations under Rule 11. At the pleading stage, however, Plaintiff has no obligation to present evidence. Its allegations against SunRace USA are sufficient to state a claim, and Defendants' motion to dismiss this claim is denied.

C.  **Personal Jurisdiction**

Defendants argue that the court lacks personal jurisdiction over either of them. In assessing that argument under the law of both the Seventh Circuit and the Federal Circuit, the court considers, first, whether the applicable state long-arm statute would authorize the exercise of personal jurisdiction over the defendant and, second, whether the exercise of personal jurisdiction would comport with due process. *RAR*, 107 F.3d at 1275-76; *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996). The Illinois long-arm statute authorizes the exercise of jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (2005). The question before the court is whether Defendants have sufficient "minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *cf. Viam Corp.*, 84 F.3d at 427 n.2 (recognizing that the same test applies in a patent action). SRAM bears the burden of showing that this test is met. *RAR*, 107 F.3d at 1276.

The Supreme Court has explained that the "minimum contacts" test is met if the defendant has "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This court may, consistent with due process, exercise personal jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). In *Viam Corp.* and *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), the Federal Circuit made clear that the "stream of commerce" theory applies whether the out-of-state defendant is the patentee or the alleged infringer:

> A patentee who seeks to enforce its patent may bring an infringement action in a proper forum, and issues regarding the validity and enforceability of the patent may be raised by the defendant. Under our law, a potential defendant in an infringement suit may, in a proper case, preempt the patentee and initiate a suit challenging the enforcement of the patent. The issues on the merits are essentially the same in either situation; the test for personal jurisdiction, for the forum's power to hear the issues, should be the same.

*Viam Corp.*, 84 F.3d at 428, *citing Akro Corp.*, 45 F.3d at 1545.

In *Viam Corp.*, the plaintiff was a manufacturer of automobile accessories. Threatened with a patent infringement action, Viam filed a declaratory judgment action against the patentee, an Italian corporation, and its exclusive distributor. The district court dismissed the action as against the Italian corporation for lack of personal jurisdiction. Reversing that decision, the Federal Circuit noted that the Italian patentee's marketing agreement and practices establish a "regular distribution channel" for its product, and that the patentee "knowingly and intentionally exploited the California market" through its distributor's advertising, furnishing of customer advice, and catalog distribution. Quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir.1994), the *Viam Corp.* court observed that the defendants "knew the likely destination of the products, and their

7

conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Viam Corp.*, 84 F.3d at 428-29.

The Federal Circuit reached the same result in *Akro Corp.*, where the plaintiff, an Ohio-based manufacturer of floor mats, sought a declaratory judgment that its products did not infringe a patent for vehicle floor mats held by a California resident. The court concluded that defendant had "purposefully directed" his activities at residents of Ohio by sending warning letters to the plaintiff's counsel and entering into an exclusive license for his patent with an Ohio-based competitor of plaintiff. 45 F.3d at 1546.

More recently, the Federal Circuit considered the question of personal jurisdiction over an out-of-state patentee where the defendant's contacts with the state were limited to three warning letters directed at the alleged infringer. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). The court began by observing that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim." *Id.* at 1359, citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Still, the court noted, although cease-and-desist letters may constitute "minimum contacts," by themselves they are generally insufficient to support the exercise of jurisdiction under the Federal Circuit's jurisprudence; subjecting a patentee to jurisdiction in a foreign forum "when its only contacts with that forum were efforts to give proper notice of its patent rights" would be inconsistent with "principles of fair play and substantial justice." *Id.* at 1360. Nor was the court moved by the fact that defendant's licensees had extensive contact with Minnesota, resulting in royalty income to defendant. The conduct of these third-party licensees, none of which was incorporated in Minnesota, was not attributable to defendant for purposes of the personal jurisdiction analysis.

Defendants urge that *Red Wing Shoe* controls this case. Indeed, SunRace's warning letters were directed to SRAM and its customers outside Illinois, and the products SunRace distributes in this jurisdiction are not covered by the patent at issue in this case. SRAM insists that the exercise of personal jurisdiction is nevertheless appropriate here because SunRace Roots "places thousands of bicycle component parts on bicycles . . . destined for sale in the United States and Chicago." (SRAM Corporation's Response to SunRace's Supplemental Brief, at 2.) Those products include gear shifters that, though assertedly not covered by the patent, compete with SRAM's allegedly-infringing products. SunRace USA distributes SunRace products in the United States and specifically within this district. In addition, SunRace regularly advertises its products in national magazines that are distributed in this district, including *American Bicylist*, a magazine published in Northbrook, Illinois, and maintains a web site on which it offers a warranty to United States purchasers, including a telephone number for claims on the warranty.

SRAM emphasizes, further, that SunRace's communications have gone beyond threats to enforce the United States and Taiwanese patents. By communicating with SRAM's distributors and customers, SunRace's warnings generate significant risk of harm to SRAM's business. Yet, although those warnings make explicit reference to SunRace's U.S. patent, Defendants contend that no court in this country has personal jurisdiction over SunRace. However meritorious the challenge to the jurisdiction of this court might be, the court would in any case be unwilling to accept the contention that SRAM's effort to obtain a judicial determination concerning the scope of SunRace's patent can only happen offshore. By obtaining a patent here, SunRace has unquestionably made a meaningful contact with this nation and has purposefully availed itself of a significant benefit of United States law. *See National Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1010 (D.C. Cir. 1989) (en banc) (R.B. Ginsburg, J.) ("By registering a patent in the United States Patent Office, a

party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords."). The court is satisfied, as well, that SunRace's commercial activities in this state and its conduct aimed at SRAM's customers are sufficient to confer specific jurisdiction here. SunRace has "purposefully directed" its activities at residents of this forum by marketing a product that directly competes with the allegedly infringing shifter, and this litigation results from alleged injuries to SRAM's own marketing efforts. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-775 (1984) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.")

Having found the necessary minimum contacts with this state, the court briefly considers whether the assertion of personal jurisdiction here would comport with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. The court recognizes the burden that litigation in this forum will place on SunRace, but believes it is outweighed by SRAM's interest in obtaining a determination of its rights and by the interest of the United States in determining the scope of patents issued here. SunRace's argument that Taiwan has an interest in determining the scope of the Taiwanese patent has merit; its suggestion that its own United States patent is not subject to scrutiny by any court in this nation does not.

The motion to dismiss (Doc. 13) is denied.

ENTER:

Dated: September 30, 2005

REBECCA R. PALLMEYER
United States District Judge